1  Law Office of Kathryn Dobel
   Kathryn E. Dobel, SBN 85530
2  Laura A. Weitzman, SBN 273403
   1700 Shattuck Avenue, 77
3  Berkeley, CA 94709
   Telephone: 510.548.2004
4  Facsimile: 510.666.1315
   Cellular: 510.301.4994
5  spedlaw@comcast.net

6  Attorneys for Plaintiff

7

8                    UNITED STATES DISTRICT COURT

9

10                 NORTHERN DISTRICT OF CALIFORNIA

11

12  COLBEY T., by and through his guardian ad       Case No.

13  litem, LISA T.                                   **COMPLAINT FOR DAMAGES**

14         Plaintiff,                                1. Civil Rights, 42 U.S.C. § 1983
                                                     2. Civil Rights, 29 U.S.C. § 794
15                                                   3. ADA, 42 U.S.C. § 12131 *et seq.*
                                                     4. Disability Discrimination, Cal. Civ.
16  MT. DIABLO UNIFIED SCHOOL DISTRICT,                 Code §§ 51, 51.7, 52
    SENECA CENTER, TOM TAMURA, DAVID                  5. Disability Discrimination, Cal. Gov't
17  JONES, GWEN SCALISE AND DOES 1-20,                   Code § 11135
                                                     6. Negligence and Negligent Supervision
18         Defendants.                               7. Intentional Infliction of Emotional
                                                        Distress
19  .

20                                                   **DEMAND FOR JURY TRIAL**

21

22

23

24  **INTRODUCTION**

25  1. Colbey T. ("Colbey"), a 14-year-old special education child

26  with emotional and behavioral disabilities, has been enrolled

27  during all relevant times herein in the Mt. Diablo Unified School

28  District ("District" or "MDUSD") in Concord, California.

COMPLAINT FOR DAMAGES                    -1-

1   2.    Through middle school, the DISTRICT failed to address
2   Colbey's behavioral and social-emotional disabilities, segregated
3   him from similarly-aged school children, failed to protect him
4   from harassment by peers on the school bus and in his segregated
5   classrooms, and often used inappropriate physical restraints when
6   he was perceived as "acting out."

7   3. District provided school staff continued to exacerbate
8   Colbey's emotional and behavioral disabilities by subjecting him
9   to an increasingly segregated program and constant, improper
10  physical restraints, negative disciplinary approaches, and
11  harassment by students in his program, in addition to seclusion
12  in an improperly supervised time out room wherein Colbey was
13  attacked and injured by another student, causing a broken collar
14  bone and fear of returning to school.

15  4. Colbey seeks monetary damages for physical injury and
16  emotional distress; violations of the Americans with Disabilities
17  Act ("ADA") and state disability laws; violations of his civil
18  rights under 42 U.S.C. § 1983 and Section 504 of the 1973
19  Rehabilitation Act, 29 U.S.C.§ 794; and state tort violations.

20  **JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT**

21  5. This action is brought under the Americans with Disabilities
22  Act (42 U.S.C. § 12131 *et seq.*), 42 U.S.C. § 1983 and Section 504
23  of the 1973 Rehabilitation Act, 29 U.S.C.§ 794. Colbey also
24  asserts various state disability rights claims and tort
25  violations.

26  6. Jurisdiction over this action is conferred by 28 U.S.C. § 1331
27  (federal question) and § 1343(3) (civil rights). Colbey's state
28  law claims for relief are within the supplemental jurisdiction of

COMPLAINT FOR DAMAGES          -2-

1  the Court pursuant to 28 U.S.C. § 1367(c).

2  7. Venue is proper in the United States District Court for the

3  Northern District of California pursuant to 28 U.S.C. § 1391(b),

4  because the acts or omissions which give rise to Colbey's claims

5  occurred in the County of Contra Costa, California, located in

6  the Northern District of California. Colbey is also, and at all

7  relevant times was, a citizen and resident of Contra Costa

8  County, located in the Northern District of California.

9  8. Since the acts or omissions which give rise to Colbey's claims

10 occurred in the County of Contra Costa, California, this action

11 shall be assigned to either the San Francisco or Oakland

12 division, pursuant to Local Rule 3-2(d).

13 9. Colbey has exhausted his administrative requirements for suing

14 public entities and employees in the State of California.

15 **PARTIES TO THIS ACTION**

16 10. Plaintiff Colbey T., a disabled minor, brings this action by

17 and through his parent and guardian ad litem, Lisa T.

18 11. Defendant Mount Diablo Unified School District ("MDUSD") is

19 the local educational agency as defined in California Education

20 Code § 56028.5, and it provides educational services to students

21 in the District where Colbey attended a special education day

22 class until he was attacked at school during the 2010-2011 school

23 year at Riverview Middle School Mental Health Collaborative

24 ("MHC"), which is operated jointly by Seneca Center under

25 contract with the District, and the District, and the District

26 and Riverview MHC personnel had control of and regularly made

27 decisions regarding Colbey's educational program.

28 12. Defendant Seneca Center is a non profit organization, duly

COMPLAINT FOR DAMAGES          -3-

1  incorporated in the State of California, referred to on its
2  website as a "system of care agency," and that operates private
3  schools and provides or operates integrated day treatment and
4  special education services on public school sites and public
5  school based mental health services in conjunction with local
6  school districts, including in this case during the relevant time
7  periods herein with the MDUSD.

8  13. Defendant Tom Tamura was at all times relevant herein the
9  MDUSD and Seneca Center Riverview Mental Health Collaborative's
10 program reviewer, on-call administrator, therapist and clinician
11 who at all times relevant hereto acted within the scope of that
12 employment.

13 14. Defendant David Jones was at all times relevant herein the
14 MDUSD and Seneca Center Riverview Mental Health Collaborative's
15 program reviewer and administrator who at all times relevant
16 hereto acted within the scope of that employment.

17 15. Defendant Gwen Scalise was at all times relevant herein the
18 MDUSD and Seneca Center Riverview Mental Health Collaborative's
19 program reviewer and on-call administrator who at all times
20 relevant hereto acted within the scope of that employment.

21 16. Plaintiff is ignorant of the true names and capacities of
22 Defendants sued herein as DOES 1 through 20, and therefore sues
23 these Defendants by such fictitious names. Plaintiff will amend
24 the complaint and allege the true names and capacities of said
25 Defendants when ascertained. Plaintiff is informed and believes
26 that each of the fictitiously named Defendants is responsible in
27 some manner for the occurrences herein alleged, and that
28 Plaintiff's damages were proximately caused by their actions.

1  17. Plaintiff is informed and believes that all times mentioned,
2  each of the named and DOE Defendants was the agent of some or all
3  of the other Defendants, and in doing the acts and making the
4  omissions alleged herein, was acting within the course and scope
5  of such agency and with the permission, authority, and/or
6  ratification of each such co-defendant. Each Defendant is jointly
7  and severally liable for all of the wrongs alleged herein.

8  **STATEMENT OF FACTS**

9  18. Since January 27, 2009, Colbey has been eligible for special
10  education services in this District under the category of
11  Emotional Disturbance pursuant to state and federal law.
12  19. Initially Colbey was placed at the Sunrise Elementary Center
13  based program in the District.
14  20. On March 6, 2009, Colbey had his annual Individualized
15  Education Program ("IEP") as a fifth grade student at Sunrise
16  Elementary in the District.  The IEP Team found that Colbey's
17  behavior impeded the learning of himself and/or others; it was
18  noted that Colbey "becomes verbally aggressive towards
19  staff/students when upset or frustrated.  He also refuses to work
20  and follow directions frequently."
21  21. The District failed to conduct a requisite functional
22  behavioral assessment; however it did attach a behavior support
23  plan (BSP) to the IEP.  The IEP documentation notes that the IEP
24  team believes that the function of Colbey's behaviors was to
25  escape difficult tasks or situations.  Under the BSP, Colbey was
26  to earn rewards, field trips, and encouragement as positive
27  behavior interventions, strategies and supports.  The IEP team
28  found that "Colbey's emotional disturbance presents challenging

1  behaviors that are disruptive to the learning environment.  He
2  requires a small specialized setting with frequent individual
3  support."

4  22. Although the District never questioned Colbey's diagnosis of
5  emotional disturbance, it failed to assess Colbey in all areas
6  related to Colbey's suspected disability including social
7  emotional status, and as noted above, behavior and concerns
8  relevant to Autism Spectrum Disorder and presenting behavioral
9  challenges.

10  23. As part of the March 6, 2009 IEP, Colbey was found eligible
11  to receive special education instruction five times weekly for
12  six hours at the center; psychological services once weekly for
13  thirty minutes at the center; social work services once weekly
14  for one hour at the center; and AB3632 mental health counseling
15  and medication management for one hour weekly and case management
16  four times per year for thirty minutes, at the center or clinic.
17  Physical education was to be specially designed. Colbey was to
18  receive accommodations and modifications including small group
19  instruction, supervised breaks within a section of the California
20  Standards Test (CST), and test questions read aloud in math and
21  science.  Transportation to and from school was to be provided to
22  Colbey as a related service because of his disability.
23  24. Colbey's next IEP meeting, on June 1, 2009, was held to
24  facilitate his transition into middle school and resulted in
25  Colbey receiving fewer services.  Notably, the social work
26  services that Colbey had previously been offered were dropped,
27  and Colbey was found eligible to receive thirty fewer minutes of
28  special education instruction daily.  Specifically, Colbey was

1    found eligible to receive special education instruction daily for
2    five and a half hours; psychological services once weekly for
3    fifteen minutes; and AB3632 mental health counseling and
4    medication management for one hour weekly and case management
5    four times per year for thirty minutes.  Accommodations,
6    modifications, and transportation remained the same as the
7    previous IEP.  Colbey was found eligible for extended school year
8    ("ESY") programs and services due to his disability.
9    25. On June 4, 2009, an educational assessment report was issued.
10   It was noted based on informal assessment or observational data
11   that Colbey has a difficult time controlling his anger,
12   especially when being teased or provoked by peers.  It was
13   further noted that Colbey has a hard time getting along with
14   peers in situations without constant adult supervision.  It was
15   observed that Colbey's greatest behavioral challenges occur when
16   he is confronted with daunting tasks in his least favorite
17   subjects.  In summary, the report notes that Colbey's performance
18   in mathematics and written language was below average, while his
19   performance in language skills, and reading was average.
20   26. On June 9, 2009, the IEP team met to conduct a three-year
21   review [without the important assessment information needed in
22   the areas of behavior and potential ASD impact} and to discuss
23   Colbey's transition from Sunrise Elementary to Riverview Middle
24   School.  Colbey was to enter Riverview Middle School on August
25   31, 2009.
26   27. The IEP team generally noted that Colbey's areas of need,
27   which were to be addressed in his goals and objectives for Colbey
28   to receive educational benefit, included writing, math, behavior,

1   and social emotional.  In addition to the services provided in
2   Colbey's previous IEP, Colbey was to receive 5 and a half hours
3   daily of day treatment from County Mental Health.  Other than the
4   addition of a day treatment program, Colbey's IEP remained
5   unchanged.
6   28. Again, no social emotional, behavioral or autism assessment
7   was done but a relatively generic Behavior Intervention Plan was
8   attached to the IEP. Pursuant to state and federal law the
9   behavioral planning must be conducted in a well planned, positive
10  and safe manner at all times.
11  29. In Colbey's last IEP of November 19, 2009, while he was a
12  sixth grade student at Riverview Middle School, his quarterly
13  case management with County Mental Health was cut from thirty
14  minutes to fifteen minutes, otherwise services remained the same.
15  30. An addition to his accommodations and modifications was made
16  that Colbey needed to take movement breaks and check-in with
17  staff, and that individual, group and family therapy was
18  available.  Colbey was also to receive staff trained in
19  Professional Assault Crisis Training ("pro-ACT") for five and a
20  half hours daily, but it is not known if the people supervising
21  Colbey in the CORE room were pro-Act trained staff.
22  31. At this IEP meeting, Colbey's mother raised concerns about
23  Colbey's school failures despite the specialized education,
24  supports and services he was to be receiving.  It was noted that
25  Colbey's emotional disturbance required him to participate in the
26  full time Mental Health Collaborative (MHC) program.  It was
27  noted that Colbey would be able to access a modified curriculum
28  geared at his level in the MHC.  As Colbey moved up or down the

1  level system he could earn or lose mainstream classes. The IEP

2  team commented that Colbey is very capable academically of

3  starting, working on and completing classroom assignments;

4  however, due to his emotional disturbance and pervasive negative

5  attitude he rarely completes any class work.  Colbey was failing

6  all of his classes at that time.  Colbey also had extreme

7  difficulty with peer relationships on the school bus, and in non-

8  structured and structured settings on campus and in class.  The

9  IEP team noted that Colbey would dwell on issues with peers for

10  hours and even into the following day. Colbey was found to have

11  difficulty following staff directions, staying focused on class

12  assignments, or on tasks, within the classroom, expressing

13  himself appropriately in class, and interacting socially in class

14  and during non-structured time.  A BSP was attached to the IEP.

15  It was noted in his BSP that use of pro-ACT trained personnel may

16  be necessary in order to keep Colbey safe, as well as others.  It

17  was emphasized in the IEP notes that Colbey must have supervised

18  breaks.

19  32.  At the Riverview Middle School MHC program, Colbey's

20  escalating behavior due to his emotional and behavioral

21  disturbance had an increasingly adverse effect on his educational

22  performance. During his 2009 - 2010 academic school year,

23  Colbey's parents received three letters from the Riverview Middle

24  School principal notifying them that Colbey was at risk for being

25  retained in his current grade for the following school year,

26  because he was receiving failing grades in core subjects that

27  included English, Math, Science, and Social Studies. These

28  letters were sent on December 3, 2009, February 2, 2010, and

1  April 19, 2010. No changes except for decreasing services as
2  discussed above were noted.

3  33. As a student at the Riverview Middle School MHC, from
4  February 25, 2009 through October 11, 2010, District notified
5  Parents of 19 behavioral incidence emergencies that took place on
6  the school site. These behavioral incidences included non-
7  compliance, disruption, recklessness, on campus runaway, unsafe
8  behavior such as picking up sticks or climbing a partition
9  outside, repeated disruption of group activity, violent threats
10 towards peers and staff, assaults towards peers and staff, and
11 assault of staff during physical interventions. Twice Colbey was
12 suspended for defiance, first on March 24, 2009, and then on
13 April 1, 2009. Colbey was routinely escorted via a walking
14 restraint to Transitional Learning Center ("TLC") and restrained
15 via a floor-assisted prone restraint, standing wall restraint or
16 a basket restraint. Colbey was increasingly anxious and fearful
17 of the use of physical restraints but the concerns were ignored.
18 The restraints were employed without adequate assessment and
19 specific behavioral planning for assessed behavioral needs.
20 34. Colbey remained enrolled for 2010-2011 in a therapeutic day
21 class at the Riverview Middle School MHC program. Despite his
22 placement in a therapeutic day center, the District never
23 assessed Colbey in his greatest area of need, his behavior, which
24 resulted in Colbey's behavior escalating and progressively
25 negatively impacting his academic performance during his
26 attendance at the Riverview Middle School MHC. Despite Parent's
27 concern that Colbey was being improperly treated at Riverview and
28 harassed by students in the program and on the bus, Colbey

1    remained at the Riverview Middle School MHC until October 11,
2    2010, when another student, whose initials are L. S., attacked
3    Colbey and broke his collar bone, while under the alleged
4    supervision of two assistant teachers in a time out room
5    [described below in paragraph 35].
6    35.   On the day of the incident, Colbey had become agitated when
7    L. S., who had a long documented history of harassing and
8    intimidating Colbey on the school bus and at school, and who on
9    this occasion began making derogatory comments to Colbey about
10   his deceased father and further instigating Colbey with verbal
11   aggression.   Colbey responded with verbal aggression and was
12   placed in the Crisis Observation and Re-entry Room ("CORE").   The
13   CORE contains cubicles where students are taken to sit and calm
14   down, under teacher supervision.   While Colbey was sitting in his
15   cubicle, L. S. was also brought into the CORE to sit in a
16   cubicle. In addition to the altercation that had occurred that
17   day between Colbey and L. S., the two students had an ongoing and
18   pervasive history of verbal altercations; their history was well
19   known to District teachers and staff.   Inside the CORE, L. S.
20   again began tormenting Colbey with comments about Colbey's
21   deceased father and other derogatory comments about Colbey.
22   36.   Neither child was removed from the CORE and their verbal
23   altercation was allowed to escalate and/or encouraged until it
24   resulted in physical violence.   Colbey reports that Tom Tamura,
25   Seneca's therapist and clinician, told Colbey and L. S. that he
26   was going to let them fight.   Thereafter, L. S. attacked Colbey,
27   pushing Colbey onto a desk and leaving Colbey with a broken
28   collarbone.   Colbey informed school personnel that he thought

COMPLAINT FOR DAMAGES              - 11 -

1 | his arm was broken and wanted his mother to pick him up. Colbey
2 | was given ice for his shoulder but his mother was not called at
3 | the time of the incident. Colbey remained at school for the rest
4 | of the day until he was placed on the school bus at the end of
5 | the day to return home, per his regular scheduling. That evening
6 | Colbey's mother took him to the emergency room where he was
7 | diagnosed with and treated for a broken collarbone.
8 | 37.  Since returning home with a broken collarbone, Colbey has
9 | been terrified of returning to school, and has therefore been
10 | home schooled by his mother, pursuant to California Department of
11 | Education protocol, while waiting for an appropriate IEP
12 | placement. On October 18, 2010, Colbey's mother sent formal
13 | written notice that she was withdrawing Colbey from Riverview
14 | Middle School MHC, and would be working with the California
15 | Department of Education in Sacramento and County Mental Health
16 | (CMH) to find alternative schooling options. Since that time the
17 | Parent has contacted CMH for additional services; Colbey was
18 | initially waitlisted for services, and has recently begun therapy
19 | from CMH to address his fears and the posttraumatic impact he
20 | suffered from the October 11, 2010 incidents. Colbey has been
21 | subjected to additional harassment by the District in the form of
22 | quasi-criminal Site Attendance Review Board (SARB) proceedings
23 | brought by the District despite the proper formal notice of
24 | withdrawal from school pending a proper IEP placement.
25 | 38.  Absent appropriate alternative placement planning by the
26 | District, the Parent has also sought out alternative placement
27 | options. Colbey has been accepted at Anova Center for Education
28 | (A.C.E.) School, a California certified non public school, in

COMPLAINT FOR DAMAGES                    -12-

1  American Canyon, California. Colbey is scheduled to begin
2  placement at the A.C.E. School on July 1, 2011 for the remainder
3  of the 2010-2011 school year during Extended School Year (ESY)
4  2011. It is yet unknown how Colbey will be able to engage in the
5  new school program due to the fears and anxiety from the prior
6  harassment and attack with injuries at school
7  39. Colbey is currently undergoing extensive independent
8  assessment by Dr. Richard Pollack, who is evaluating, among other
9  concerns, Colbey's posttraumatic stress impact from the events at
10 Riverside and the involvement during and after the event by the
11 Defendants, and each of them. The full extent of the damage
12 assessment is still ongoing in this case and is yet unknown to
13 the plaintiffs.

14                        **FIRST CLAIM FOR RELIEF**

15    **DAMAGES FOR CIVIL RIGHTS VIOLATIONS UNDER 42 U.S.C. § 1983**

16              (Against all Defendants and DOE Defendants)

17 Plaintiff realleges and incorporates by reference each allegation
18 set forth in paragraphs 1 through 39.
19 40. By engaging in the above-described misconduct, including but
20 not limited to permitting or encouraging excessive force against
21 Colbey by another student known to provoke Colbey, and in an area
22 where Colbey was confined and could not safely escape attack and
23 injury, Defendants, acting under color of state law, violated
24 Colbey's federally-protected civil rights under 42 U.S.C. § 1983.
25 41. Defendants Seneca Center and MDUSD have failed to adopt and
26 enforce appropriate policies and procedures for its employees
27 and/or contracted staff to effectively control, communicate, and
28 interact with children with emotional and/or behavioral

1  disabilities based on development and implementation of
2  individual positive behavioral plans. Defendants have also failed
3  to train and supervise its employees and/or contracted staff
4  regarding appropriate interactions with emotionally and/or
5  behaviorally disabled children, including the proper use of
6  discipline and detention. Thus, Defendants, acting under color of
7  state law, deprived Colbey of his federally protected civil
8  rights by:
9  (a) Formulating, maintaining, authorizing, ratifying, condoning,
10  and acquiescing in policies, customs, and practices which
11  proximately caused the constitutional deprivations alleged
12  herein;
13  (b) Training and supervising employees and/or contracted staff
14  with deliberate indifference to the constitutional rights of
15  persons such as Colbey and other children with emotional and/or
16  behavioral disorders;
17  (c) Setting in motion a series of acts by others, or knowingly
18  refusing to terminate a series of acts by others, which they knew
19  or reasonably should have known would cause others to inflict the
20  constitutional injury on Colbey and other children with
21  emotional and/or behavioral disorders;
22  42. Colbey believes and on that basis alleges that all Defendants
23  committed the acts and omissions alleged herein intentionally
24  and/or with reckless disregard of his rights.
25  43. In doing all of the acts complained of herein, Defendants
26  acted intentionally, recklessly and/or with deliberate
27  indifference to Colbey's well being, all under color
28  of state law to deprive Colbey of his constitutionally protected

1  rights to be free from excessive use of force by a fellow student
2  during confinement for discipline and detention.

3  44. As a direct and proximate result of the aforementioned acts,
4  Colbey has suffered and continues to suffer humiliation, anxiety,
5  indignity, and mental and emotional anguish.

6  45. Pursuant to 42 U.S.C. § 1988, Plaintiff is entitled to
7  recover compensatory damages and reasonable attorneys' fees and
8  costs incurred in bringing this action.

9                    **SECOND CLAIM FOR RELIEF**
                 **DAMAGES FOR CIVIL RIGHTS VIOLATIONS**
10  **SECTION 504 of the 1973 REHABILITATION ACT, 29 U.S.C. § 794**

11              (Against All Defendants and DOE Defendants)

12  Plaintiff realleges and incorporates by reference each allegation
13  set forth in paragraphs 1 through 39.

14  46. The District violated Colbey's civil rights protections as a
15  student with a disability under Section 504 of the 1973
16  Rehabilitation Act, 29 U.S.C.§ 794 by excluding Colbey from
17  participation in, denying him the benefits of, and/or subjecting
18  him to discrimination in the benefits and services they provide
19  to the general public, including the right to personal safety at
20  school and protection from harassment. Notwithstanding Colbey's
21  disability, subjected Colbey to discrimination on the basis of
22  his disability by failing to provide services that are as
23  appropriate and effective as services provided to non-disabled
24  members of the general public. The MDUSD also subjected Colbey to
25  SARB proceedings because of his disability despite documentation
26  that his parent had properly enrolled him in a school program at
27  home through the State Department of Education while attempting

28

1  to work with them to investigate the MDUSD actions, and to locate

2  an appropriate school placement where Colbey would be safe from

3  harm and harassment.

4  47. Colbey believes and on that basis alleges that all Defendants

5  committed the acts and omissions alleged herein intentionally

6  and/or with reckless disregard of his rights.

7  48. As a direct and proximate result of the aforementioned acts,

8  COLBEY has suffered and continues to suffer humiliation, anxiety,

9  indignity, and mental and emotional anguish.

10  49. Pursuant to 29 U.S.C. § 794(a), Plaintiff is entitled to

11  recover compensatory damages and reasonable attorneys' fees and

12  costs incurred in bringing this action.

13                          **THIRD CLAIM FOR RELIEF**

    **DAMAGES FOR VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**
14                      **42 U.S.C § 12131 et seq.**

15            (Against Defendant MSUSD and DOE Defendants)

16  Plaintiff realleges and incorporates by reference each allegation

17  set forth in paragraphs 1 through 39.

18  50. Title II of the Americans with Disabilities Act ("ADA")

19  provides in pertinent part: "[N]o qualified individual with a

20  disability shall, by reason of such disability, be excluded from

21  participation in or be denied benefits and services, programs, or

22  activities of a public entity, or be subjected to discrimination

23  by any such entity." 42 U.S.C. § 12132.

24  51. At all times relevant to this action, Defendant MDUSD was a

25  public entity within the meaning of the ADA and provided a

26  program, service, or activity to the general public.

27  52. At all times relevant to this action, Colbey was a qualified

28

1  individual with a disability within the meaning of the ADA and

2  met the essential eligibility requirements for the receipt of

3  services, programs, or activities of Defendants.

4  53. MDUSD violated the ADA by excluding Colbey from participation

5  in, denying him the benefits of, and/or subjecting him to

6  discrimination in the benefits and services they provide to the

7  general public.

8  54. Notwithstanding Colbey's disability, Colbey believes and on

9  that basis alleges that Defendant MDUSD subjected Colbey to

10  discrimination on the basis of his disability by failing to

11  provide services that are as appropriate and effective as

12  services provided to non-disabled members of the general public.

13  55. As a direct and proximate result of the aforementioned acts,

14  Colbey has suffered and continues to suffer humiliation, anxiety,

15  indignity, and mental and emotional anguish.

16  56. Pursuant to 42 U.S.C. § 12133, Plaintiff is entitled to

17  recover compensatory damages and reasonable attorneys' fees and

18  costs incurred in bringing this action.

19                          **FOURTH CLAIM FOR RELIEF**
                **DAMAGES FOR VIOLATION OF UNRUH CIVIL RIGHTS ACT**
20                    **Cal. Civ. Code §§ 51, 51.7, and 52**

21              (Against All Defendants and DOE Defendants)

22  Plaintiff realleges and incorporates by reference each allegation

23  set forth in paragraphs 1

24  through 39.

25  57. Defendants provide educational services to students in Mt.

26  Diablo USD, in Contra Costa County. All Defendants are prohibited

27  by the terms of the Unruh Civil Rights Act, Cal. Civil Code

28

COMPLAINT FOR DAMAGES                    -17-

1  § 51 *et seq.*, from engaging in discrimination in the
2  "accommodations, advantages, facilities, privileges, or services"
3  they provide against any person with a disability.
4  58. By treating Colbey's behavior, not as a result of his
5  emotional and behavioral disability, but as if it were the
6  behavior of a person without a disability, Defendants,
7  and each of them, discriminated against and denied equal access
8  to COLBEY and others similarly situated in violation of Cal.
9  Civil Code § 51.
10 59. By permitting or encouraging Colbey to fight with a student
11 who was otherwise traumatizing him, Defendant violated Colbey's
12 "right to be free from any violence, or intimidation by threat of
13 violence, committed against their persons or property because of"
14 his disability in violation of Cal. Civ. Code § 51.7.
15 60. Based on the foregoing, Colbey is entitled to compensatory,
16 punitive, and statutory damages, and a civil penalty from each
17 Defendant as alleged herein, as well as attorneys' fees, pursuant
18 to Cal. Civil Code § 52.
19               **FIFTH CLAIM FOR RELIEF**
20   **EQUITABLE RELIEF FOR VIOLATION OF CAL. GOV'T CODE § 11135**
21                (Against MDUSD and DOE Defendants)
22 Plaintiff realleges and incorporates by reference each allegation
23 set forth in paragraphs 1 through 39.
24 61. Section 11135(a) of the California Government Code provides
25 in pertinent part: "No person in the State of California shall,
26 on the basis of . . . disability, be unlawfully denied the
27 benefits of, or be unlawfully subjected to discrimination under,
28 any program or activity that is funded directly by the state or

1  receives any financial assistance from the state."

2  62. At all times relevant to this action, Defendant MDUSD

3  received financial assistance from the State of California.

4  63. Through their acts and omissions described herein, Defendant

5  MDUSD has violated Government Code § 11135 by unlawfully denying

6  Colbey the benefits of, and unlawfully subjecting him to

7  discrimination under, the programs and activities of Defendants.

8  64. Plaintiff is informed, believes, and thereon alleges that

9  Defendant MDUSD discriminated against Colbey, as alleged in

10 paragraphs 40 through 44.

11 65. Because the discriminatory conduct was ongoing, appropriate

12 remedies, as well as reasonable attorneys' fees incurred in

13 bringing this action are appropriate.

14                    **SIXTH CLAIM FOR RELIEF**

15           **NEGLIGENCE AND NEGLIGENT SUPERVISION**

16           (Against all Defendants and DOE Defendants)

17 Plaintiff realleges and incorporates by reference each allegation

18 set forth in paragraphs 1 through 39.

19 66. Defendants had a legal duty of care to Colbey. Defendants had

20 a duty to provide an appropriate, effective, and safe learning

21 environment for COLBEY while he was in their care and custody.

22 67. Defendants participated in the events that culminated in an

23 attack perpetrated on Colbey by L. S. while under the supervison

24 and care of defendants in violation of 5 C.C.R. §§ 3052(L)(1) and

25 (2), which prohibit any intervention that is designed or likely

26 to cause pain.

27 68. By using constant physical restraints on Colbey in the

28 classroom over a prolonged period of time, Defendants violated

COMPLAINT FOR DAMAGES                    -19-

1  federal and state laws governing the use of restraints in
2  educational settings, including but not limited to the Hughes
3  Bill and 5 C.C.R. §§ 3052 *et seq.*

4  69. By virtue of the statutory violations, Defendants' conduct
5  constitutes negligence per se.

6  70. By engaging in all the misconduct complained of herein,
7  including but not limited to providing a safe learning
8  environment and failing to adequately supervise the time out
9  room, defendants breached the duty of care they owed to Colbey,
10  thereby causing physical and emotional injury and damage to
11  Colbey as described above in paragraphs 32 – 36, and incorporated
12  herein.

13              **SEVENTH CLAIM FOR RELIEF**

14        **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

15           (Against all Defendants, and DOE Defendants)

16  Plaintiff realleges and incorporates by reference each allegation
17  set forth in paragraphs 1 through 39.

18  71. By engaging in the misconduct complained of herein,
19  Defendants intentionally or recklessly engaged in extreme and
20  outrageous conduct against Colbey, including:

21  (a). Constantly using physical restraints on Colbey;

22  (b). Maintaining Colbey in close proximity to peers who harassed,
23  taunted and were allowed and/or encouraged to fight with him;

24  72. Defendants' extreme and outrageous conduct caused severe
25  emotional distress to COLBEY, who is still receiving treatment
26  for his injuries.

27                  **PRAYER FOR RELIEF**

28  WHEREFORE, Plaintiff prays for relief as follows:

COMPLAINT FOR DAMAGES          -20-

1.  Judgment against all Defendants and each of them;

2.  General damages according to proof;

3.  Special damages according to proof;

4.  Equitable damages according to proof;

5.  Punitive damages;

6.  Prejudgment interest;

7.  Reasonable attorneys' fees incurred;

8.  Costs of suit incurred;

9.  Such other relief as the Court deems necessary and proper.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury on all his legal claims pursuant to Federal Rules of Civil Procedure 38(b).

DATED: June 23, 2011          LAW OFFICE OF KATHRYN E. DOBEL

Kathryn E. Dobel
Laura A. Weitzman
Attorneys for Plaintiff